DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court summary judgment entered in favor of Alexander Cemetery, Inc., defendant below and appellee herein.
Harry Carsey, Sue Carsey, Jon Carsey, Amber Carsey, Rose Carsey, and Lawrence Carsey, plaintiffs below and appellants herein, raise the following assignment of error for review:
 "PLAINTIFFS-APPELLANTS ASSERT AS THEIR SOLE ASSIGNMENT OF ERROR THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLANT ON THE SEVEN LIABILITY THEORIES ASSERTED AGAINST ALEXANDER CEMETERY, INC."
In 1903, William W. Carsey purchased Lot 68, Fraction 1 at Alexander Cemetery. On November 8, 1946, William was buried in the lot that he purchased.
On April 7, 1986, Lewis Carsey passed away. Lewis was married to Mary and was (1) the father of Harry, Rose, and Lawrence, (2) the grandfather of Jon and Amber, and (3) the father-in-law of Sue. The family wished to bury Lewis in the Carsey family plot at the Alexander Cemetery (appellee).
Appellee's sexton, Max Ellis, began to prepare Lewis's burial site. Ellis examined the Carsey family plot and determined that it was fully occupied. Ellis nevertheless began to dig a grave for Lewis within the Carsey plot. Upon digging the grave, Ellis hit "an old wooden box," which led him to believe that someone was already buried in that location.
Ellis claimed that he informed Harry Carsey that Ellis believed Lewis's intended grave site was occupied and that Harry nonetheless told Ellis to proceed with preparing the site for Lewis's burial. Harry denied that Ellis informed him, prior to Lewis's burial, that a body was already buried in that location. Lewis ultimately was buried within the Carsey family plot in the spot Ellis believed to contain another body.
On June 13, 1996, Mary Carsey, Lewis's wife, passed away. The Carsey children wished for their mother and father to be buried next to one another. Upon hearing of Mary's death and the family's desire to bury her next to Lewis, Ellis informed appellee that the Carsey plot was full and that burying Mary next to Lewis was not possible. Ellis also explained to the appellee that he believed Lewis had been buried on top of another person. Appellee advised the Carsey family of the situation and informed the family that the sexton believed that Lewis had been buried in a previously occupied grave.
Although appellee would not permit Mary to be buried immediately next to Lewis, appellee did offer to provide a burial location for Mary within a close distance to her husband. The space was located near a pathway and was located in a section of the cemetery that previously had not been used for burial purposes. Appellants agreed to bury Mary in the offered spot and requested appellee to disinter Lewis and to re-inter him next to Mary. Appellee agreed to permit appellants to disinter and re-inter Lewis. Appellee refused, however, to pay for the expense of moving Lewis's grave site.
During the disinterment, Harry requested the grave diggers to probe his father's former burial site to determine whether someone else had been buried in that location. After probing the grave site, the grave digger informed Harry that he did not think anyone had been buried there.
On January 24, 1997, appellants filed a complaint against appellee. Appellants asserted several causes of action arising out of: (1) the burial of Lewis in a grave alleged to be occupied by another body; (2) the inability of appellee to bury Mary next to her husband; and (3) Mary's burial in an alleged roadway. The causes of action included: (1) negligence; (2) negligent and intentional infliction of emotional distress; (3) wrongful burial; (4) wrongful disposition of a corpse; (5) trespass and conversion; and (6) violations of the Consumer Sales Practices Act ("CSPA").
Appellants' negligence claims alleged that appellee prevented: (1) Lewis from being "properly interred for eternity in his proper cemetery lot by" appellee's "negligence in filling the" grave with an unidentified body; and (2) Mary from being buried next to her husband. Appellants' negligent and intentional infliction of emotional distress claims alleged that they suffered emotional distress as a result of appellee's conduct: (1) in burying Lewis on top of an unidentified body; (2) in failing to properly bury Lewis; (3) in failing to bury Mary next to her husband; and (4) in burying Mary in a roadway. Appellants' wrongful disposition of a corpse claims asserted that appellee, intentionally and with malice, went forward: (1) with Lewis's burial without informing appellant that an unidentified body was already buried in the grave; and (2) with burying Mary in a roadway. Appellants' wrongful burial claims asserted that the cemetery wrongfully buried Lewis in an occupied grave and wrongfully buried Mary in a roadway. Appellants' CSPA claims alleged that appellee performed its work in a shoddy, incompetent, and unworkmanlike manner and failed to correct the service. Appellants' trespass and conversion claim alleged that appellee, by burying an unknown person in the plot intended for Lewis, committed a trespass upon Lewis's grave site.
On April 10, 2000, appellee filed a motion for summary judgment. Appellee asserted that while most of appellants' claims were premised upon their claim that Lewis had been buried on top of another body, appellants presented no concrete evidence that another body had occupied Lewis's grave site. Appellee noted that the grave digger who performed Lewis's disinterment informed appellants that he did not find another body in the grave. Appellee also asserted that contrary to appellants' suggestion, Mary was not buried in a roadway. Rather, appellee argued that the evidence demonstrated that Mary was buried next to (not in) a roadway that serves as a pathway and that appellants agreed to this burial site. Appellee thus argued that no evidence existed to support appellants' claims.
Appellants contended that genuine issues of material fact remained as to each one of their claims and that summary judgment, therefore, would be improper. In particular, appellants argued that genuine issues of material fact remained as to whether: (1) another body occupied Lewis's original grave site; and (2) Mary was buried in a roadway. In support of their argument that genuine issues of material fact remained as to whether Lewis's original grave site had previously been occupied, appellants referred to Max Ellis's, the cemetery's sexton, deposition. Appellants noted that Ellis stated that: (1) when digging the grave for Lewis, he believed the Carsey plot to be full; (2) he nevertheless continued digging; and (3) upon digging Lewis's grave, he hit an old wooden box.
On May 12, 2000, the trial court granted appellee summary judgment. The court concluded that appellants had failed to demonstrate that a genuine issue of material fact remained as to whether Lewis had been buried in a previously occupied grave and, thus, appellants could not illustrate a fact necessary to prove their claims.[1] The court noted that although the sexton stated that he encountered wood while digging Lewis's grave, the existence of wood in a grave site, standing alone, did not demonstrate that a body had been buried in the grave. Appellants filed a timely notice of appeal.
In their sole assignment of error, appellants argue that the trial court erred by granting appellee summary judgment. Within their assignment of error, appellants raise four issues: (1) whether appellee has responsibility to the Carsey family for (a) Lewis's burial in a grave that appellee's sexton believed to have been occupied and (b) the refusal to bury Mary next to her husband because appellee believed that the grave next to Lewis was occupied; (2) whether appellants can maintain a cause of action against appellee for the tort of intentional or negligent infliction of emotional distress as a result of (a) Lewis's burial in an already occupied grave, (b) appellee's refusal to bury Mary next to Lewis because the site was believed to be occupied, and (c) appellants witnessing "unexpected conditions" upon Lewis's exhumation; (3) whether appellee is liable in trespass for the burial of unknown bodies within appellants' family's grave plot; and (4) whether appellee is liable under the CSPA for (a) Lewis's burial in an allegedly occupied grave, (b) Lewis's exhumation and reburial at appellants' expense, and (c) the refusal to bury Mary next to Lewis because the grave site was fully occupied.
Appellee argues that no genuine issues of material fact remain for resolution at trial. Appellee asserts that appellants can produce no evidence regarding two facts essential to each of their seven claims: (1) that a body had been buried in Lewis's grave; and (2) that Mary was buried in a roadway.
Initially, we note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts ade novo review. See, e.g., Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
In McCullough v. Spitzer Motor Ctr., Inc. (Jan. 27, 1994), Cuyahoga App. No. 64465, unreported, the court discussed when a genuine issue of material fact sufficient to defeat a summary judgment motion exists. The court stated:
 "[A] `genuine issue' exists when the evidence presents `a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.' * * * In order for the evidence to be in `sufficient disagreement,' the court must `ask [itself] * * * whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict — whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."
(Citations omitted) (quoting Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242 and Turner v. Turner (1993), 67 Ohio St.3d 337,617 N.E.2d 1123).
Thus, in order to meet its burden under Civ.R. 56 the nonmoving party need not try its case. Rather, the nonmoving party must produce more than a scintilla of evidence. Paul v. Uniroyal Plastics Co. (1988),62 Ohio App.3d 277, 282, 575 N.E.2d 484, 487; see, also, SpringfieldLocal School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp., Local530 (1995), 106 Ohio App.3d 855, 667 N.E.2d 458 (stating that a genuine issue of material fact is not created by a mere scintilla of evidence or by evidence that is not significantly probative). Moreover, "`The non-moving party may not rely on isolated facts to support his claim. Indeed, he must show that the evidence as a whole substantiates his claim.'" Hamilton v. 312 Walnut Ltd. Partnership (Dec. 31, 1996), Hamilton App. No. C-960368, unreported (quoting Paul,62 Ohio App.3d at 282, 575 N.E.2d at 487); see, also, Norwest Bank Minnesota v. Biscello
(Nov. 14, 2000), Franklin App. No. 98AP-1245, unreported.
As we stated in Fuchsman v. Pancoast (Apr. 21, 1988), Ross App. No. 1413, unreported:
 "'* * * [T]o say that the court must send the case to the jury whenever there is any evidence, no matter how slight, which tends to support a party's claim, is, in extreme cases, to permit the jury to play with shadowy and elusive inferences which the logical mind rejects. Before the judge is required to send the case to the jury, there should be in evidence something substantial from which a reasonable mind can draw a logical deduction. If reasonable minds may draw difference inferences, or reach different conclusion, a jury question is presented. But, if reasonable minds can reach only one conclusion, the jury should not be allowed to speculate upon the matter. To do so is to allow them the opportunity of returning a wholly unreasonable verdict.'"
(quoting Hamden Lodge, I.O.O.F. v. Ohio Fuel Gas Co. (1934),127 Ohio St. 469, 482, 189 N.E. 246, 251).
Once a court determines the material facts, it then must determine whether a genuine issue as to those facts remains for resolution at trial. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present `a sufficient disagreement to require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'" Turner, 67 Ohio St.3d at 340,617 N.E.2d at 1126 (quoting Anderson v. Liberty Lobby, 477 U.S. at 251-252).
In the case at bar, we do not believe that the trial court inappropriately granted appellee summary judgment. Rather, we agree with the trial court's conclusion that no genuine issues of material fact remain for resolution at trial.
Contrary to appellants' suggestion, we do not believe that the sexton's statement that he encountered wood while digging Lewis's grave necessarily requires the court to infer that a body had been buried in the grave. Without further evidence, the sexton's testimony only demonstrates that wood existed in the grave. Thus, the sexton's testimony raises a mere scintilla of evidence that a body was buried in the grave and is insufficient to demonstrate the existence of a material fact.
Moreover, no evidence exists, other than appellants' conclusory allegations, that: (1) either Mary or Lewis were buried outside family plot; (2) the cemetery was contractually obligated to bury Mary next to her husband; (3) the cemetery was contractually obligated to bury Mary in any specific location; (4) Mary was buried in a walkway or a roadway; or (5) persons other than Carsey family members were buried in the Carsey plot. Appellants have produced no evidence to overcome appellee's motion for summary judgment.
Furthermore, we note that except when the offending conduct is sufficiently egregious, courts have routinely rejected negligence, emotional distress, or trespass claims based upon a wrongful burial. See, generally; Frys v. Cleveland (1995), 107 Ohio App.3d 281,668 N.E.2d 929, discretionary appeal disallowed (1996), 75 Ohio St.3d 1422,662 N.E.2d 25; Davis v. Billow Co. Falls Chapel (1991), 81 Ohio App.3d 203,610 N.E.2d 1024; Carney v. Knollwood Cemetery Assn. (1986),33 Ohio App.3d 31, 32, 514 N.E.2d 430; Brownlee v. Pratt (1946),77 Ohio App. 533, 68 N.E.2d 798; Dunker v. Babitt Funeral Home, Inc. (Apr. 25, 1996), Cuyahoga App. No. 69727, unreported; Clark v. Pilote
(Tenn.Ct.App. 1999), 20 S.W.3d 665. We note that appellee's conduct in the case sub judice falls short of the type of conduct generally deemed to constitute the abuse or mishandling of a body or the desecration of a grave.
Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ Peter B. Abele, Presiding Judge
Harsha, J.: Dissents, Evans, J.: Concurs in Judgment Only
[1] In granting appellee summary judgment, the trial court referred to the facts stated in its prior opinion regarding the cemetery trustees' motion for summary judgment.